UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------x

JEREMY PLINIO VILLEGAS UVILLUS,

Petitioner,

**MEMORANDUM & ORDER**
26-CV-4747

-against-

DAVID VENTURELLA,[1] in his official capacity as Acting Director of U.S. Immigration and Customs Enforcement et al.,

Defendants.

-----------------------------------x

ERIC KOMITEE, United States District Judge:

Jeremy Plinio Villegas Uvillus petitions for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. Pet. 1, ECF No. 1. He was arrested by U.S. Immigration and Customs Enforcement ("ICE") on July 23, 2026. Following his arrest, ICE determined that he was subject to mandatory detention pursuant to 8 U.S.C. § 1225(b)(2)(A). Resp. to O.S.C. 2, ECF No. 8. Uvillus requests that the Court "order [his] immediate release" or provide him with a bond hearing. Pet. 8. He also requests that the Court enjoin his transfer out of this district. For the reasons outlined below, his petition is granted in part.

[1] Venturella has been automatically substituted for his predecessor, Todd Lyons. *See* Fed. R. Civ. P. 25(d). The Clerk of Court is respectfully directed to amend the case caption accordingly.

## I. Background

The following facts are taken from the declaration of ICE Officer Michal Dec. Decl. of Michal Dec dated August 13, 2026 ("Dec Decl."), ECF No. 8-1. These facts have not been disputed.

Petitioner is a citizen of Ecuador. Form I-385, Alien Booking Record, ECF No. 8-2. In November 2022, U.S. Border Patrol arrested him "near the U.S.-Mexico border" and determined that he had entered the country unlawfully. Dec Decl. ¶ 3. Respondents granted Uvillus parole pursuant to 8 U.S.C. § 1182(d)(5). *Id.* ¶ 4. His parole expired in January 2023, such that Uvillus became subject to removal proceedings. *Id.* ¶ 5; *see* 8 U.S.C. § 1182(d)(5). In November of that year, he filed an "application for relief from removal" with the U.S. Citizenship and Immigration Service. Dec Decl. ¶ 6. That application remains pending. *Id.*

In July 2026, Uvillus was arrested in Manhattan pursuant to a Form I-200, Warrant for Arrest of Alien. *Id.* ¶ 7. Following his arrest, respondents served him with a Form I-862 directing him to appear before an Immigration Judge for removal proceedings. *Id.* ¶ 9. Uvillus is currently detained at the Metropolitan Detention Center in Brooklyn. *Id.* ¶ 13.

## II. Discussion

### A. The Court Has Jurisdiction to Decide the Motion

"Federal courts must determine that they have jurisdiction before proceeding to the merits." *Lance v. Coffman*, 549 U.S. 437, 439, (2007).[2] Under 28 U.S.C. § 2241(c)(3), federal courts have jurisdiction to "grant a writ of habeas corpus whenever a petitioner is in custody in violation of the Constitution or laws or treaties of the United States." *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003), *superseded by statute on other grounds*, 8 U.S.C. § 1252(a)(4). In contrast, federal courts lack jurisdiction to review the "discretionary judgment" by the Attorney General to detain a non-citizen pending removal. 18 U.S.C. § 1226(e). Federal courts also cannot hear challenges to detention that "aris[e] from any action taken to . . . remove" a petitioner. *Mahdawi v. Trump*, No. 25-1113, 2026 WL 2090981, at *6 (2d Cir. July 21, 2026). Here, Uvillus challenges only the constitutionality of his detention. Pet. 6. The Court thus has jurisdiction to decide the motion. *See Jennings v. Rodriguez*, 583 U.S. 281, 294-96 (2018).

---

[2] Unless otherwise noted, when quoting judicial decisions this order accepts all alterations and omits all citations, footnotes, and internal quotation marks.

## B. Section 1226(a) Governs Petitioner's Detention

Uvillus argues that his "[d]etention under [M]atter of *Q Li* or *Hurtado* violates" his rights under the due process clause. Pet. 6. This assertion appears to refer to two decisions issued by the Board of Immigration Appeals ("BIA"): *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025), and *Matter of Q. Li*, 29 I&N Dec. 66 (BIA 2025). In *Hurtado*, the BIA held that non-citizens present in the country who have not been lawfully admitted are subject to "mandatory detention" under Section 1225. 29 I&N Dec. at 219-20; *see Hyppolite v. Noem*, 808 F. Supp. 3d 474, 489 (E.D.N.Y. 2025) (explaining that *Q. Li* applied the same standard to non-citizens detained at the border). While Uvillus does not elaborate on his argument, he seems to be challenging his detention pursuant to Section 1225. Respondents confirm that Uvillus is detained under the mandatory detention provision in Section 1225(b)(2)(A), but argue that his detention under that provision is lawful because he was initially apprehended at the border in 2022. Resp. to O.S.C. 2.

Under the Second Circuit's decision in *Barbosa da Cunha v. Freden*, Uvillus' detention is governed by Section 1226(a), which provides for discretionary detention. *See* 175 F.4th 61, 73 (2d Cir. 2026). In *da Cunha*, the court held that Section 1226(a) applied to an asylum seeker who entered the

country twenty years before his arrest. *Id.* at 70, 96. The court explained that Section 1225(b)(2)(A) applies only to a non-citizen who is *both* an "applicant for admission" and "seeking admission." *Id.* at 73-74. Specifically, it covers "those noncitizens who present themselves at a port of entry . . . or who cross the physical border into the United States but are apprehended at the threshold of initial entry." *Id.* at 75. The *da Cunha* petitioner was an "applicant for admission," as he was "unlawfully present." *Id.* But he was not "seeking admission," because he was "not requesting lawful entry into the United States" — to the contrary, he already resided here. *Id.* at 74. Section 1226(a) thus governed his detention. *Id.*

Under this standard, Section 1226(a) also applies to Uvillus's detention. Uvillus is an applicant for admission, as he is unlawfully present. But *da Cunha* dictates that he is not "seeking" admission. Uvillus has lived in the country for nearly four years. And he has established ties here, working as a plumber and residing with his family in Queens. Ex. F., Record of Sworn Statement 4-6, ECF No. 8-7. Other courts applying *da Cunha* have held that similar periods of residence establish that a petitioner is not seeking admission. *E.g.*, *R.M.R. v. Genalo*, No. 26-CV-4358, 2026 WL 2211009, at *3 (E.D.N.Y. July 31, 2026) (four years of residence); *Simms* v.

*Arteta*, No. 26-CV-5712, 2026 WL 2076009, at *3 (S.D.N.Y. July 17, 2026) (three years).

Respondents nevertheless argue that Section 1225(b)(2)(A) applies to Uvillus because, unlike the *da Cunha* petitioner, Uvillus was first apprehended at the border and paroled into the country. Resp. to O.S.C. 3. Respondents assert that this distinction matters because *da Cunha* recognized that Section 1225(b)(2)(A) applies to non-citizens "apprehended at the threshold of initial entry." *Id.* Respondents also rely on *Leng May Ma v. Barber*. 357 U.S. 185 (1958). In *Barber,* the Supreme Court held that a paroled non-citizen is treated, for purposes of his legal status, as if stopped at the border — a concept known as the "entry fiction." *Id.* at 189; *Sarmiento Guerrero v. Noem*, 815 F. Supp. 3d 181, 188 (E.D.N.Y. 2025).

As respondents concede, this Court rejected a similar argument in *Sarmiento Guerrero.* 815 F. Supp. 3d at 188. We reject it now for substantially the same reasons. As we explained in that case, parole permits aliens to enter the country without admission. *Id.*; *see* 8 U.S.C. § 1182(d)(5). Parolees thus remain "applicants for admission into the country." *Sarmiento Guerrero*, 815 F. Supp. 3d at 188. But parole concerns an individual's immigration status; it does not indicate whether a petitioner is currently "seeking admission"

under Section 1225(b)(2)(A). *Id.* (citing *United States v. Balde*, 943 F.3d 73, 84 (2d Cir. 2019)).

*Da Cunha* reinforces this conclusion. *See, e.g.*, *Simms*, 2026 WL 2076009, at *3; *Robles Escalona v. Warden, Mdc Brooklyn*, No. 26-CV-3920, 2026 WL 2018505, at *3 (E.D.N.Y. July 13, 2026). A parolee residing in the country is not seeking admission under *da Cunha* because he is not "seeking admission *right now*." *da Cunha*, 175 F.4th at 77. The entry fiction does not meaningfully alter this analysis. Even if Uvillus were "at the border" for purposes of his legal status, that status alone does not mean that he is seeking admission "right now" under Section 1225. *Simms*, 2026 WL 2076009, at *3; *Sarmiento Guerrero*, 815 F. Supp. 3d at 188. Respondents' reliance on the entry fiction conflates petitioner's status as an "applicant for admission" with that of a person "seeking admission" — an interpretation the *da Cunha* court rejected. *da Cunha*, 175 F.4th at 74-75.

## III. Conclusion

For the foregoing reasons, petitioner's motion is granted in part. Respondents are directed, on or before September 9, to afford Uvillus a bond hearing that complies with federal laws and regulations, or to release him. *See Guartazaca Sumba v. Crowley*, No. 25-CV-13034, 2025 WL 3126512,

at *5 (N.D. Ill. Nov. 9, 2025). The parties are directed to file a status report on or before September 11 that addresses Uvillus's release status in accordance with the foregoing.

SO ORDERED.

/s/ Eric Komitee
ERIC KOMITEE
United States District Judge

Dated: August 27, 2026
Brooklyn, New York